Dave CHILDRESS, Appellant,

v.

Augusta CHILDRESS, Appellee.

Court of Appeals of Kentucky.

May 6, 1960.

G. Wix Unthank, Harlan, for appellant.

J. K. Beasley, Harlan, for appellee.

STANLEY, Commissioner.

The appeal relates to the part of a default divorce judgment which approved an agreement of the defendant husband surrendering all claims to property held in his wife's name. Particularly, the question is whether the trial court abused a judicial discretion in not permitting the defendant to file answer after time therefor had expired, or in overruling his motion to amend or set aside the judgment in respect to the property rights of the parties.

The appellee, Augusta Childress, sued the appellant, Dave Childress, for divorce on the grounds of settled aversion and cruel and inhuman treatment. No alimony or maintenance was asked. The defendant was served with summons on March 28, 1958, and later, on April 29, was given notice of the taking of depositions by the plaintiff. He had not filed an answer and was not present or represented by an attorney when the depositions were taken. The plaintiff filed with her deposition an agreement which had been executed by the parties on April 5, 1958, ten days after her complaint was filed. The document recites that the husband accepted $500 in cash in full settlement of any and all claims he might have against the property that either of the parties may have acquired by reason of their marriage. Specifically, the husband released all interest he had or might have in the "Childress Grocery Store" and to "the furniture in their residence, to any money, stocks and any and all property which the parties have acquired since their marriage to each other, excepting the personal effects" of the husband.

The answer was due to be served April 14th. Plaintiff's depositions were filed May 6th. No order of submission for judgment appears in the record. On May 9th the defendant, by an attorney, moved the court to permit him to answer and defend. The motion and supporting affidavit charged the agreement as to the property rights of the parties had been executed by him in ignorance of his rights and through fraud and undue influence of his wife.

The plaintiff controverted all the charges and allegations. She stated further that "during the divorce proceedings" her husband "wanted a little money and out of the goodness of her heart she gave him $500." She stated she was the owner of all the property held in her name; that she had earned and saved the money to purchase the property (valued at $15,000), and her husband had no right or interest therein.

The court overruled the defendant's motion to be permitted to file an answer because no good cause for the delay was shown. Judgment awarding the plaintiff a divorce and approving and adopting the agreed settlement was then entered. The defendant promptly filed a motion to amend

or set aside the judgment on the grounds of mistake and excusable neglect on his part, misrepresentation and fraud on the part of his wife, and that the property settlement was unfair, inequitable and caused undue hardship. As stated above, this motion was overruled.

We summarize the record and affidavits of the respective parties filed on both motions.

At the time of these proceedings the defendant, now appellant, was 65 years old and the appellee fifteen years younger. He was a widower with grown children and she a divorcee with four small children at the time of their marriage, nineteen years before the separation. He is illiterate but can sign his name.

The defendant described in detail his various employments and earnings in recent years. Because of his wife's disposition and in order to keep peace in the family, he had permitted her to take title to their property, although some of it came to him through a daughter by a former marriage. The rest was acquired through the joint efforts of the parties and by reason of the marriage relation. He described the property as being three houses and lots valued at $18,000, grocery fixtures worth $3,000, deposits in bank of more than $5,000 and other personal property, the total value of all the property being $40,000. The parties had jointly owned a grocery store in Cincinnati, which had been sold for $9,500 before they returned to Harlan to live. Title to that property was in the husband. The proceeds of the sale and other joint funds had been used to acquire the Harlan store and other property. Because of his illiteracy, his wife had kept all the books and records of the family.

The wife's story is that none of the property was obtained by her husband through his daughter and that he had furnished no money for the purchase of the grocery store. She had applied her half of the proceeds of the sale of the Cincinnati store to its acquisition while her husband had "either lost, gambled or spent his money on women." In short, the wife categorically denied the allegations of the husband, set forth the conveyances of the real estate to her, and claimed she had earned and owned all the property.

As to the execution of the paper, the appellant states his wife told him she would give him $500 if he would sign papers giving her a divorce, and at her request he had gone with her to the office of her attorney in order to "sign divorce papers;" that if the document was read to him, it was not done in such a way that he could understand it, and its full scope was misrepresented by his wife so that he did not know the consequences of signing the paper. On the other side, the wife stated that the document was dictated and drawn up in her husband's presence and read to him, and he was paid $500, and that he had freely and voluntarily signed the document without misrepresentation or deceit.

While the courts look with favor upon the voluntary settlement of property rights of a husband and wife who have been or expect to be legally separated, such an agreement must be in all respects fair and reasonable in view of the circumstances of the parties at the time and with full knowledge of the rights and the consequences of the agreement. It may be avoided by a spouse who has been deceived or overreached. Sparks v. Sparks, 215 Ky. 508, 284 S.W. 1111; Alderson v. Alderson, 247 Ky. 12, 56 S.W.2d 534; Clark v. Clark, 301 Ky. 682, 192 S.W.2d 968; Adkins v. Jones, Ky., 264 S.W.2d 265. The court should particularly scrutinize the release for a nominal consideration by one of the parties of his or her statutory right to have restored an interest in property acquired or obtained from or through the other party during marriage and in consideration of the marriage. KRS 403.060.

Because of public concern, the court should be liberal in divorce proceed-

ings in permitting the raising of issues so that there may be full opportunity to present all the evidence. We fully recognize that the trial court has a broad discretion in controlling the pleadings; but if it seems to this court that the discretion exercised was not sound, we overrule the lower court in rejecting a pleading raising an issue. Hannan v. Hannan, Ky., 256 S.W.2d 485. Default judgments in divorce cases are not looked upon with favor even in regard to property rights. 17 Am.Jur., Divorce and Separation, § 387. Since every cause of action should be tried upon the merits, the rendering of judgments by default ought to be withheld where seasonable objection is made unless a persuasive reason to the contrary is submitted. Obviously, the discretion exists in the trial court to set aside a default judgment for good cause (CR 55.02, 60.02) and allow answer to be filed in relation to property rights which have been adjudicated by default in a divorce proceeding. A liberal attitude should be observed toward a timely application to set aside a default judgment, although de-

lay in pleading without reasonable excuse cannot always be overlooked. Hackney v. Charles, 220 Ky. 574, 295 S.W. 869; Bond v. W. T. Congleton Co., 278 Ky. 829, 129 S.W.2d 570; Vanover v. Ashley, 298 Ky. 722, 183 S.W.2d 944. In the present case, the delinquent defendant had sought to head off the entry of the default judgment by his motion. That fact is a significant and important consideration.

It seems to us that the husband in this case made a prima facie showing that the release he signed may be unfair and he may have been taken advantage of. We are of opinion that the trial court should have permitted him to attack its integrity and validity and have tried the issue on its merits. We may observe that as we read the record, the wife made out a weak case for a divorce.

So much of the judgment as approves and adopts the agreement described is reversed for consistent proceedings.

Judgment reversed.