RENDERED: MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1128-MR

BARBARA U. WILEY; BARBARA A.
DAY; AND JOHNATHAN D. DAY                                    APPELLANTS


v.
APPEAL FROM JACKSON CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
ACTION NO. 24-CI-00136


MARILYN STATON                                                APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, L. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: In this case concerning disputed rights as to real property, Barbara U. Wiley ("Wiley"), Barbara A. Day, and Johnathan D. Day (collectively "the Residents"), proceeding *pro se*, appeal a default judgment of the Jackson Circuit Court ("the circuit court"). As the record before us does not support a finding that any of the Residents were actually in default, or that Barbara A. Day and Johnathan D. Day ("the Days") were served with requisite notice for the

hearing on the motion for default judgment, we vacate and remand for further proceedings consistent with this Opinion.

**BACKGROUND**

A long history of prior proceedings precedes the action that is the subject of this appeal. A series of actions to which Wiley and Marilyn Staton ("Staton") were both parties previously occurred in the Jackson Circuit Court, in the United States Bankruptcy Court(s), as well as in this Court. Any detailed recitation of this inherently complex procedural and factual history is hampered by the record on appeal. Selected documents from certain prior state actions that were attached to pleadings filed in the underlying case are present in the record before us. However, other documents from prior state actions were not included in the record on appeal for this case. Further documents from those prior state actions are included in the appendices of the parties' appellate briefs despite not being included in the record on appeal.[1]

In our efforts to discern the arguments and factual assertions of the parties, this Court has reviewed some additional documents that were filed or

---

[1] Under the procedural rules of this Court, appellate briefs may introduce or attach materials and documents that were not included in the record only where they are "matters of which the appellate court may take judicial notice[.]" Kentucky Rule of Appellate Procedure ("RAP") 32(E)(1)(c).

entered in other cases preceding the action under appeal that are readily accessible through electronic means. However, not all documents from those cases are available in this manner, including filings that are explicitly referenced in the parties' respective briefs. Consequently, a number of matters asserted in the parties' respective versions of the factual and procedural background preceding this case cannot be ascertained by this Court. In the background set forth below, we have relied upon the record on appeal as well as some documentation from the related actions of which we may take judicial notice. Any factual or procedural recitations of the parties in their appellate briefs which could not be confirmed by the record or readily available electronic means are referenced in our analysis only to clarify the arguments presented and positions asserted in this Appeal.

In 2006, Wiley entered into an agreement with Marilyn and Clint Staton, who were the owners of a lot of real property located at 306 Big Hill Mountain Road in McKee, Kentucky ("the Property"). Pursuant to the agreement, Wiley and other members of her household began residing in a mobile home on the Property.

In 2013, Wiley and her then grandson-in-law, Cory L. Kelly entered a retail installment contract for the purchase of a manufactured home with Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). The manufactured home

was set on the Property. Also in 2013, Wiley made a payment of $7,000.00 to the Statons toward the purchase of the Property.

In 2018, Vanderbilt filed a "Complaint to Enforce Security Interest" in the Jackson Circuit Court (No. 18-CI-00018) that named Wiley, Kelly, and the Statons as defendants. The complaint asserted that Wiley and Kelly had defaulted on the retail installment contract and that Vanderbilt sought enforcement of a secured interest in the manufactured home. The complaint stated the Statons were believed to be owners of real property upon which the manufactured home was situated and called upon them to assert their interests. Wiley filed for bankruptcy during the pendency of the action and the circuit court case was stayed for a period and then eventually dismissed.[2]

In 2022, Vanderbilt again filed a "Complaint to Enforce Security Interest" in the Jackson Circuit Court (No. 22-CI-00152) naming Wiley, Kelly, and the Statons as defendants. Along with their answer to the complaint in this action, the Statons asserted a cross-claim against Wiley and Kelly. There, the Statons asserted they had contracted to sell the Property to Wiley on May 31, 2013, that she had defaulted, and that she was indebted to them in the sum of $29,330.32.

---

[2] Wiley appealed an "Amended Judgment in REM and Order of Possession" that was entered in the case to this Court (No. 2019-CA-1481). The appeal was dismissed on April 6, 2021, for Wiley's failure to timely file an appellant brief. Following the dismissed appeal, the circuit court case was eventually dismissed.

The cross-claim requested the contract with Wiley be held null and void or, in the alternative, that the Property be sold by the commissioner and the net proceeds be paid to the Statons.

A judgment in rem and order of possession was entered in the case as to Vanderbilt's claims. The Statons successfully pursued a default judgment and order of sale on their cross-claim. On June 30, 2023, the Master Commissioner sold the Property to the Statons at a purchase price of $11,000.00, with the Statons taking a credit against their judgment for the purchase price and cost of sale.

Wiley filed two appeals to this Court. The first (No. 2023-CA-0418) was dismissed on December 21, 2023, for Wiley's failure to timely file an appellant brief. The second (No. 2023-CA-1315) was dismissed on April 3, 2024, for Wiley's failure to timely file an appellant brief.

The action directly underlying the present appeal was initiated on June 19, 2024, when Marilyn Staton filed an "Ejectment Complaint" in Jackson Circuit Court (No. 24-CI-00136).[3] The complaint named Wiley, Kelly, and the Unknown Occupants, if any, of 306 Old Big Hill Mountain Road, McKee, Kentucky 40447 ("Unknown Occupants") as defendants. For relief, the complaint requested

---

[3] Clint Staton passed away in 2023. The Complaint alleged the Property had been conveyed to the Statons by deed of the Master Commissioner as tenants in the entirety and that, pursuant to a survivorship provision in the Master Commissioner's deed, Clint's interest had vested with Marilyn.

judgment that Staton possessed superior title to the Property and for an order that declared her entitled to immediate possession and requiring the defendants to vacate.

Contemporaneous with her complaint, Staton also filed a motion for the appointment of a Warning Order Attorney for the Unknown Occupants. A supporting affidavit signed by Staton's counsel indicated the Unknown Occupants were "an individual or individuals whose identity and current whereabouts [were] unknown" to Staton.

Wiley was personally served with summons on July 11, 2024. Thereafter, on July 31, 2024, a responsive pleading styled "Reply to and Defense of Ejectment Complaint" was filed with the circuit court which indicated it had been "respectfully submitted by" the Residents, "Barbara U. Wiley, Barbara A. Day, Johnathan D. Day, pro se".

In the pleading, the Residents asserted that they had paid Staton in full for the Property and that they were the owners in fee simple. The pleading contended the Residents had paid more than $45,000.00 to Staton for the Property and that she had given them assurances "on multiple occasions that as far is she is concerned [they] were paid in full."

The pleading further alleged that Staton's cross-claim in the 2022 case had been fraudulent. Additionally, the pleading took issue with the identification

-6-

of the parties by Staton. The Residents asserted Kelly had not resided at the address since approximately 2016, had never been party to any contract with Staton, and should not have been named in the complaint. Elsewhere, the pleading alleged the Residents were the only persons currently residing at the Property, that their residency and identities were each known to Staton, and that there were no occupants whose identities were unknown to her. The pleading asserted Wiley and Barbara Day had both resided on the Property since 2006, while Johnathan Day had also resided there since 2008. The final page of the pleading included a "Distribution List" that listed separately the names and addresses of both Staton and her counsel.

The day after the responsive pleading was filed, August 1, 2024, Staton filed a motion for default judgment and warrant for possession. The motion alleged that, despite service of summons on Wiley, "no answer or other pleading has been filed herein, nor have any papers been served upon the undersigned by said Defendant[.]" In the third and fourth pages of the motion, there was notice of a hearing to occur during the court's regular motion hour on August 6, 2024. A certificate of service indicated a copy of the motion was being mailed to Wiley and another copy to the Warning Order Attorney for the Unknown Defendants.

Along with the motion, Staton tendered a proposed order to the circuit court which included the following language:

> This cause having come on to be heard before the Court
> pursuant to a Motion for Default Judgment and Warrant
> for Possession filed herein by the Plaintiff and the court
> having reviewed the file and it appearing that this action
> was filed on June 19, 2024 and that Summons was issued
> thereon and served upon the Defendant Barbara U Wiley
> on July 11, 2024, that the Plaintiffs motion shows that no
> answer or other pleadings or papers have been served on
> the Plaintiff by the Defendant nor on Plaintiff's
> counsel[.]

(Errors in original.)

On August 5, 2024, Staton filed a notice with the circuit court indicating that she was voluntarily dismissing her claims against Kelly, pursuant to CR[4] 41.01, "based upon information and belief that [he] no longer occupies the premises" but that she "intend[ed] to proceed with its claims against the remaining Defendants herein."

Counsel for Staton appeared at the hearing during motion hour before the circuit court on August 6, 2024.  Neither the Occupants nor any representatives of them were present.  Following the brief hearing, the Judge signed the order tendered by Staton ("the Judgment", R, p. 39-42).

This appeal follows.  Additional facts will be developed as necessary.

---

[4] Kentucky Rules of Civil Procedure.

-8-

## STANDARD OF REVIEW

Neither party identifies the applicable standard of review. A party against whom a default judgment has been entered may seek direct relief from the trial court. *See* CR 55.02 ("For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02."). Additionally, as the Residents have here, a party may also directly appeal a lower court's default judgment. *Jeffrey v. Jeffrey*, 153 S.W.3d 849, 851 (Ky. App. 2004). Where direct appeal of a default judgment is pursued, however, the applicable standard of review is more limited than when relief is sought from the trial court. *Id.* Where an appellant files an immediate appeal of a default judgment with this Court and has not first sought relief from the lower court pursuant to CR 55.02 and CR 60.02, the scope of an appellate court's review will be limited to a determination as to "whether the pleadings were sufficient to uphold the judgment, or whether the appellant was actually in default." *Mingey v. Cline Leasing Service, Inc.*, 707 S.W.2d 794, 796 (Ky. App. 1986).

## ANALYSIS

Outside of exceptions that are not present in this case, there is no constitutional right to counsel in civil cases. *Smith v. Bear, Inc.*, 419 S.W.3d 49, 55 (Ky. App. 2013). Still, litigants who exercise their right of self-representation usually increase the likelihood they will see an unfavorable outcome to the

-9-

litigation. *Id.* The Residents acknowledge their *pro se* status here and that appeals by Wiley in related cases have been dismissed by this Court as a result of noncompliance with procedural rules. Nonetheless, they pursue the current appeal without legal counsel.

The Appellant brief presents scattershot arguments which stray far from any direct attack on the Judgment and requests relief outside of that this Court may order. The Residents fail to pinpoint the flaws for which we vacate the Judgment today. Nonetheless, the Residents call our attention to the responsive pleading filed in the record by including discussion of the defenses and denials asserted there and by attaching a copy to their brief. Although it is certainly not unlimited, "a degree of lenity is afforded *pro se* litigants and they are not strictly held to the same standard as legal counsel[.]" *Smith*, 419 S.W.3d at 55 (citing *Beecham v. Commonwealth*, 657 S.W.2d 234, 236 (Ky. 1983)). While there is minimal explicit challenge to the Judgment itself in the Appellant brief, we discern at least an implicit argument by the Residents that they were not actually in default. And by pursuing a direct appeal of a default judgment, our review turns upon our assessment of whether the Judgment is supported by the record.

It is noteworthy that Staton's Appellee brief was submitted by counsel and that she had legal representation throughout the underlying proceeding. In her Appellee brief, Staton argues that the circuit court's judgment should be affirmed

-10-

but she likewise advances no argument utilizing the applicable standard of review. In fact, her Appellee brief scarcely acknowledges that the order under appeal *was* a default judgement. And nowhere is there any explicit acknowledgment the Judgment was obtained by an allegation that Wiley was in default yet remaining silent as to the defendants for whom she had sought constructive service. Furthermore, as with the *pro se* Appellants, Staton's brief requests relief from this Court well outside of the scope of our review of a default judgment. She requests we "dismiss" the "claims" that she contends the Residents included in their responsive pleading.

Regarding the defendants in the underlying action, the Judgment under appeal contains specific findings and conclusions only as to Wiley and not about the other defendants. Outside of listing the "Unknown Occupants" among the defendants in the caption, the Judgment, which is identical to the proposed order Staton tendered with her motion, contains no reference to any occupants other than Wiley. The names of neither of the Days appear anywhere in the Judgment. Staton characterizes the Order as finding that "Wiley and other Unknown Occupants of the subject premises including but not limited to Barbara Day and Jonathan Day were wrongfully in possession of the premises" and that it required all "to vacate same." We agree with Staton that the nature of the order, which declares that Staton "shall be entitled to immediate execution of a Warrant

-11-

for Possession on September 6, 2024[,]" does, in effect, declare the Days in wrongful possession and requires them to vacate.

## The Residents Were Not Actually in Default

Pursuant to CR 55.01, a party is in default when they have "failed to plead or otherwise defend as provided by these rules[.]" While a mere appearance by a defendant invokes the three-day notice rule for any hearing on a motion for default judgment, a defendant who has entered a technically deficient appearance may still be vulnerable to a default judgment. *Statewide Env't Servs., Inc. v. Fifth Third Bank*, 352 S.W.3d 927, 931 (Ky. App. 2011).

As previously noted, Staton makes no direct assertion that any of the Residents were actually in default when the Order was entered. As this Court has long ago pointed out, "default judgments are not looked upon with favor as it is the policy of the law to have every case decided on its merits." *Dressler v. Barlow*, 729 S.W.2d 464, 465 (Ky. App. 1987). Staton primarily argues any defenses offered by the Residents must fail on the basis of issue preclusion or collateral estoppel, as well as claiming a substantive argument regarding adverse possession. However, Staton points to nowhere on the record that these issues were reviewed or decided by the circuit court. Typically, an appellate court "is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989); *Matthews v. Ward*, 350

-12-

S.W.2d 500 (Ky. 1961). The issue raised by Staton and decided by the circuit court was that of default judgment and "a motion for default judgment is not a proper vehicle to test the legal sufficiency of an otherwise timely response." *Kearns v. Ayer*, 746 S.W.2d 94, 95 (Ky. App. 1988).

Moreover, Staton's argument relies upon only her representation as to what, precisely, was litigated in actions preceding the underlying case; those records from other actions are not before this Court. Additionally, her argument implicitly presumes that the defenses stated in the responsive pleading here are based entirely upon factual assertions and allegations by the Residents which occurred prior to judgment being rendered in those previous actions. We decline to make such a presumption and proceed with analysis based upon the standard of review we have determined to be appropriate.

**The Responsive Pleading was Timely Filed as to Each of the Residents**

As provided by the civil rules, a party must timely answer a civil complaint. Pursuant to CR 12.01, the Residents were each required to answer the complaint within 20 days after they were served with summons. Calculation of this deadline is different for Wiley, who was specifically named as a defendant and served with summons, than for the Days, who were not specifically named and for whom constructive service was sought.

-13-

The record indicates that service for Wiley occurred on July 11, 2024. Accordingly, her deadline to file a timely responsive pleading answer was on July 31, 2024. The responsive pleading was timely as to Wiley; on this same day the responsive pleading was filed.

Staton sought to attain constructive service, pursuant to CR 4.05(e), upon the "Unknown Occupants" named in her complaint. CR 4.05 provides for the clerk's entry of an order warning the party to appear and defend the action within 50 days. The record reflects entry of a Warning Order on June 19, 2024, which required any "Unknown Occupants" to appear and defend the action by August 8, 2024. Accordingly, the filing of the responsive pleading on July 31, 2024, was timely as to the Days.

**The Responsive Pleading Sufficiently Answered the Complaint Pursuant to CR 55.01**

The initiating document Staton filed in the underlying action was styled "Ejectment Complaint" and alleged she possessed superior title to the real property of which the defendants were in wrongful possession and that, despite a notice to vacate, the defendants had refused to surrender possession. The complaint requested judgment as to Staton's claim for superior title, and an order declaring she was entitled to immediate possession and requiring the defendants to vacate the Property. The complaint cited no statutory authority for the cause of action, or the relief requested.

-14-

Under common law, the cause of action for ejectment is sufficiently stated where a complaint alleges that the plaintiff "is the owner of and entitled to the possession of the land, and that the defendant is wrongfully withholding possession thereof." *Alexander v. Duncan*, 57 S.W.2d 58, 59 (Ky. 1933). In turn, a defendant may answer in defense of a complaint for ejectment by denial of the allegations of ownership, right to possession, and wrongful possession, "or he may deny and plead, ownership in himself." *Id.*

In the responsive pleading filed by the Residents, the allegations of the complaint which were material to the cause of action are unmistakably denied. This responsive pleading denies Staton's allegations that she held superior title and a right to possession. The pleading clearly asserts that the Residents are the rightful owners of the Property and plainly denies that any were in wrongful possession.

That the responsive pleading is not a model of clarity and bears evidence of its *pro se* origin is not a deficiency that effects our evaluation. Substantively, the responsive pleading filed by the Residents was sufficient to constitute an answer for purposes of CR 55.01. This Court has previously determined that a *pro se* defendant who timely filed a "rudimentary" answer in defense of a civil complaint was not in default. *Kearns*, 746 S.W.2d at 95. This was the case even though the answer had not been served on opposing counsel,

-15-

where the defendant's answer was filed in the record prior to the motion for default judgment. *Id.*

### The Responsive Pleading was Not Signed by the Residents

We do not conclude that the responsive pleading is free of deficiencies. CR 11 dictates that "[a] party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address." The endorsement at the close of the responsive pleading contains a separate name and address for each of the Residents. However, the only "signatures" which appear are typewritten.

> CR 5.02 . . . recognizes only three types of "signatures" for purposes of our civil rules: (1) a "hand-signed original signature"; (2) "[t]he signature of an attorney or party on a document served by electronic mail . . . represented by '/s/' followed by the typed name of the person signing the document," or, also in the context of an electronically-served document; and (3) "a scanned version of an original signature."

*Rose v. Lexington-Fayette Urb. Cnty. Gov't*, 707 S.W.3d 557, 567 (Ky. App. 2025) (quoting CR 5.02(2)).

None of the typewritten "signatures" by the Residents are preceded by "/s/", and nowhere does the pleading indicate it was being served electronically. "No Kentucky civil rule or authority permits a 'signature' consisting simply of a typed name to satisfy CR 11." *Rose*, 707 S.W.3d at 567.

-16-

A party's failure to sign their answer *may* result in it being stricken. *Leedy v. Thacker*, 245 S.W.3d 792, 796 (Ky. App. 2008). Nonetheless, an unsigned pleading, motion, or other paper "is merely voidable, not automatically void[.]" *Rose*, 707 S.W.3d at 568. An unsigned pleading should not be stricken by a circuit court for lack of a signature, pursuant to CR 11, in the event "it is signed promptly *after the omission is called to the attention of the pleader or movant*." CR 11 (emphasis added). Constructive notice of an unsigned pleading is insufficient to strike a pleading under CR 11 as the "notice of an omission is not simply imputed by the obviousness of the omission or by operation of law[.]" *Rose*, 707 S.W.3d at 568. Accordingly, where a defendant files a deficient answer, the circuit court "should not afterwards render a judgment disregarding the plea, but should notify the party before its action that the pleading is insufficient and give him an opportunity to correct it." *Statewide Env't Servs., Inc.*, 352 S.W.3d at 932 (quoting *Simon v. Webster*, 211 S.W. 866, 869 (Ky. 1919)).

Although "our caselaw holds that an appellate court may affirm a lower court on any basis supported by the record . . . the cited rule presumes the alternative basis of affirmance was properly raised before the trial court." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 320 (Ky. 2023). The ostensible CR 11 violation we note is unmentioned in the appellate briefs of either party. Neither have we encountered any reference to it in our review of the

-17-

record. It does not provide an alternative basis to affirm the Judgment here and to do so would be an overstep by this Court. *Rose*, 707 S.W.3d at 569.

On remand, the circuit court should notify the Residents of the CR 11 deficiency and provide them with an opportunity to correct it by signing the "Reply to and Defense of Ejectment Complaint" on file or by submitting a duplicate that contains the signatures of the Residents. *Rose*, 707 S.W.3d at 569 (citing *Becker v. Montgomery*, 532 U.S. 757, 763 (2001).

### Staton's Failure to Comply with the Mandatory Requirements of CR 55.01 Renders the Default Judgment Void

Where "the party against whom judgment by default is sought has appeared in the action," the moving party is *required* to serve that party "with written notice of the application for judgment at least three days prior to the hearing on such application." CR 55.01. Compliance with this three-day notice rule is mandatory. *Leedy*, 245 S.W.3d at 796. Failure to comply is a "fatal defect" in the proceedings which *requires* the judgment be set aside. *Id.* (citing *Hankins v. Cooper*, 551 S.W.2d 584, 585 (1977)); *Kearns*, 746 S.W.2d at 96.

As we have eluded to earlier in this opinion, whether a party has "appeared" in an action is a lower hurdle than whether a party has sufficiently pled a defense. There is no doubt that both Days had "appeared" in the case prior to the filing of the motion for default judgment. *See Leedy*, 245 S.W.3d at 796 (quoting *Smith v. Gadd*, 280 S.W.2d 495, 498 (Ky.1955)) ("The word 'appeared' as it is

-18-

employed in CR 55.01 has been construed to mean that 'the defendant has voluntarily taken a step in the main action that shows or from which it may be inferred that he has the intention of making some defense.'").

A certificate of service attached to Staton's Motion for Default Judgment indicated that the motion had been served upon Wiley by depositing a copy with the United States Postal Service on August 1, 2024. Notice of a hearing to occur during the court's regular motion hour of August 6, 2024, was contained within the motion; accordingly, the motion indicates that Staton served Wiley with notice of the hearing the minimum three days prior.[5] As to the Days however, the threshold requirement of compliance with the three-day notice rule under CR 55.01 did not occur.

Staton's motion certified that notice was served upon the "Warning Order Attorney for Unknown Occupants" in the same manner. However, there is no indication that notice was provided to either of the Days. Accordingly, the Judgment is void as to the Days and must be vacated and remanded.

---

[5] August 3rd and 4th, 2024 were a Saturday and Sunday and not included in a computation of the period, per CR 6.01.

**Even if No Responsive Pleading Had Been Filed, Staton's Motion for Default Judgment Was Premature as to the Unknown Occupants**

Entry of the Judgment was in contravention of CR 4.07(5), which requires that "[n]o judgment shall be rendered against a defendant for whom a Warning Order is made until a report required by this rule has been filed." Consequently, even under the presumption that Staton lacked actual notice of the responsive pleading filed by the Residents, her motion for default judgment was premature when she filed it, on August 1, 2024. By operation of CR 4.08, the Unknown Occupants for whom Staton had gained entry of a Warning Order on June 19, 2024, were not deemed summoned until July 19, 2024. Constructive service would not have conferred in rem jurisdiction to the circuit court to determine the interests held by any Unknown Occupants in the Property until the passing of the August 8, 2024, deadline for an appearance and presentation of a defense by those defendants. Staton filed her motion more than a week before this, forty-three days after she had obtained entry of the Warning Order. And entry of the Judgment occurred on August 7, 2024, a day *prior* to the passing of the deadline for the Unknown Occupants to answer.

Simply reviewing the Warning Order she had obtained would have reminded Staton this deadline had not yet passed when she filed her motion. Likewise, examination of the record would have alerted the circuit court the matter was not ripe for a default judgment on the date it signed Staton's proposed order.

Additionally, the absence, at that time, of any report from the Warning Order Attorney would have provided an additional red flag.

A Warning Order Attorney for the "Unknown Occupants" was appointed for the purpose of informing the defendants of the action on the same date the Warning Order was entered by the circuit clerk. Pursuant to CR 4.07(1), within 50 days after her appointment, that attorney should have filed a report advising the court of her efforts to warn the Unknown Occupants of the pending action. As with the deadline for defendants subject to constructive service to appear and answer, the Warning Order Attorney's report was not due until August 8, 2024. And entry of the default judgment had already occurred just prior to that date.

Nonetheless, the record indicates the Warning Order Report here was filed about *a month* after entry of the Judgment, on September 5, 2024. There, the Warning Order Attorney appointed by the circuit court advised she had been unable to determine whether the Unknown Occupants had been served, advised of the instant action, or provided with a copy of the initiating complaint. A proposed order the Warning Order Attorney tendered which awarded fees for her services required that Staton pay the amount "prior to the entry of a judgment" in the action. The proposed order was signed by the circuit Judge and entered into the

-21-

record on October 2, 2024, nearly two months after the entry of the default judgment.

We are mindful of the workload and heavy burden upon the circuit court. Nonetheless, "[s]ince every cause of action should be tried upon the merits, the rendering of judgments by default ought to be withheld where seasonable objection is made unless a persuasive reason to the contrary is submitted." *HP Hotel Mgmt., Inc. v. Layne*, 536 S.W.3d 208, 213 (Ky. App. 2017) (quoting *Childress v. Childress*, 335 S.W.2d 351, 354 (Ky. 1960)). On the date Staton's motion for default judgment was heard, inspection of what was then a slim record would have revealed a responsive pleading had been filed over a week prior, voicing a timely objection and intention to defend against the action. Even if the responsive pleading had not been filed, inspection would have alerted the circuit court no report from the Warning Order Attorney had been filed and that the deadline for the Unknown Occupants was unexpired.

We are additionally mindful that counsel for Staton did not provide the circuit court with an accurate or complete recitation of the record in the case in her motion. Aside from the erroneous assertion that no responsive pleading had been filed by Wiley, Staton's motion was silent as to the Unknown Occupants in Staton's motion, as well as to the appearance of the Days in the case. It is more troubling this silence continued at the hearing on the motion. The circuit court *was*

advised that Staton wished to voluntarily dismiss her claims against Kelly, who had not been personally served nor subject to constructive service.

Violation of procedural rules by counsel increases the possibility of an injustice being hidden, even where counsel has not intended to do so. *J.P.T. v. Cabinet for Health & Fam. Servs.*, 689 S.W.3d 149, 152 (Ky. App. 2024). Counsel might avoid the suggestion of such an intent through the exercise of due diligence and good-faith efforts to fulfill both the spirit and letter of the law. This exercise would have also avoided the procurement of the void judgment here and our consequential reversal today. In turn, all parties to this action might have been relieved of the continued uncertainty they have surely experienced through the pendency of this appeal, as well as the lack of finality which now continues in an already extended period of litigation.

The Appellee brief seeks resolution on the merits of the case by this Court, based upon a default judgment obtained in a prior case and for which the record is not before us. We imply no opinion as to the merits of these arguments. If the assertions are accurate (and provided the *prior* default judgment obtained on Staton's behalf is not void as a matter of law) the proper venue for presentation of this argument is before the circuit court. Furthermore, we note nothing on the record that prevented Staton from this pursuit, rather than by (alleged) default. Following the timely filing of responsive pleading by the Residents and the report

of the Warning Order Attorney, Staton could have moved the circuit court for a determination on the merits. Doing so, rather than filing the inaccurate and premature motion for default judgment, would have been in keeping with the clear policy and preference of Kentucky law. *See HP Hotel Mgmt., Inc.*, 536 S.W.3d at 213; *Dressler v. Barlow*, 729 S.W.2d 464, 465 (Ky. App. 1987) ("Default judgments are not looked upon with favor as it is the policy of the law to have every case decided on its merits.").

## CONCLUSION

For the foregoing reasons, the default judgment of the Jackson Circuit Court is reversed, the default judgment is set aside, and this matter is remanded for litigation on the merits.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Barbara U. Wiley, *pro se*
Barbara A. Day, *pro se*
Johnathan D. Day, *pro se*
McKee, Kentucky

BRIEF FOR APPELLEE:

Stuart K. Olds
Richmond, Kentucky